UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ISAAC DELGADO,

       Petitioner,

v.                                Case No:  2:14-cv-42-FtM-38MRM

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

       Respondents.
_____/

## OPINION AND ORDER[1]

### I. Status

Petitioner Isaac Delgado (hereinafter "Petitioner," "Delgado," or "Defendant") initiated this action proceeding *pro se* by filing a timely 28 U.S.C. § 2254 petition for writ of habeas corpus (Doc. #1, "Petition") and Memorandum of Law (Doc. #1, pp. 11-19, "Memorandum") challenging his judgment and conviction of aggravated battery with a deadly weapon entered in the Twentieth Judicial Circuit Court in Collier County, Florida. The Petition raises four grounds of ineffective assistance of counsel.

---

[1] Disclaimer:   Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.   These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.   Likewise, the court has no agreements with any of these third parties or their Web sites.   The court accepts no responsibility for the availability or functionality of any hyperlink.   Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

Respondent[2] filed a Response (Doc. #14, Response) opposing all grounds and attached supporting exhibits (Doc. #16, Exhs. 1-19) comprising the record on direct appeal and postconviction pleadings.   *Inter alia*, Respondent argues that Petitioner has not satisfied 28 U.S.C. § 2254(d) (1)-(2).[3]   Petitioner filed a Reply (Doc. #17).

For the reasons that follow, the Court concludes that Petitioner is not entitled to habeas relief and the Petition must be denied.   Because the Petition can be resolved on the basis of the record, an evidentiary hearing is not warranted.   Schriro v. Landrigan, 550 U.S. 465, 473-474 (2007) (finding if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## II. Background and Pertinent Procedural History

Petitioner was charged by Information with aggravated battery causing great harm and aggravated battery with a firearm.[4]   Exh. 1, Vol. I at 20.   Proceeding to trial on an

---

[2] Rule 2(a) of the Rules Governing Section 2254 Cases in United States District Courts provides that applicants in "present custody" seeking habeas relief should name "the state officer having custody of the applicant as respondent."   The Supreme Court has made clear that there "is generally only one proper respondent to a given prisoner's habeas petition."   Rumsfield v. Padilla, 542 U.S. 426, 435 (2004).   This is "'the person with the ability to produce the prisoner's body before the habeas court.'"   Id. at 435-436. In this case, the proper Respondent is the Secretary of the Florida Department of Corrections.   The Florida Attorney General is dismissed from this action.

[3] Respondent submits that Petitioner timely filed the Petition.   See Response at 4-6.

[4] The January 23, 2008 Information contained the following counts:

> 1.   On or about June 20, 2007 in Collier County, Florida, [Delgado] did unlawfully commit a battery upon Samuel Guerrero, by actually and intentionally touching or striking said person against said person's will, and in committing said

amended information that consolidated the two charges into one, Exh. 1, Vol. II at 3, the jury returned a guilty of aggravated battery with a deadly weapon, Exh. 1, Vol. I at 97. Petitioner was sentenced to a thirty-year term of imprisonment with a minimum-mandatory term of twenty-five years.   Petition at 1; Exh. 1, Vol. I at 100.   The appellate court *per curiam* affirmed without a written decision on July 26, 2010.   Delgado v. State, 30 So. 3d 499 (Fla. 2d DCA 2010) [table].

Petitioner, through collateral counsel, moved for postconviction relief under Florida Rule of Criminal Procedure 3.850.   Exh. 7.   The postconviction court dismissed Petitioner's motion in part and permitted leave to amend the first ground.   Exh.  8. Upon reviewing Petitioner's supplemental motion and the state's response, the postconviction court entered an order summarily denying Petitioner's Rule 3.850 motion. Exh. 11.   With the assistance of counsel, Petitioner appealed, Exh. 15, and the appellate court entered an order *per curiam* affirming the postconviction court's decision, Delgado v. State, 2012 WL 8469507 (Fla. 2d DCA 2012)[table](Exh. 16).   Mandate issued on

---

battery did intentionally or knowingly cause great bodily harm, permanent disability, or permanent disfigurement to the said Samuel Guerrero, and during the course of committing said battery against Samuel Guerrero did actually possess and discharge a firearm and as a result of the discharge, great bodily harm was inflicted upon Samuel Guerrero, contrary to Florida Statute 784.045; 775.087.

2.  On or about June 20, 2007 in Collier County, Florida, [Delgado] did unlawfully commit a battery upon Samuel Guerrero, by actually and intentionally touching or striking said person against said person's will, and in committing said battery did use a deadly weapon, to-wit: a firearm, and during the course of committing said battery against Samuel Guerrero did actually possess and discharge a firearm, contrary to Florida Statute 784.045; 775.087.

September 20, 2013.   Petitioner then initiated the instant *pro se* federal habeas corpus

petition on January 27, 2014, raising four grounds for relief.

### III.   Applicable § 2254 Law

#### A.   Deferential Review Required By AEDPA

Petitioner filed his Petition after the effective date of the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).

Abdul-Kabir v. Quarterman, 550 U.S. 233, 246 (2007); Penry v. Johnson, 532 U.S. 782,

792 (2001).   Consequently, post-AEDPA law governs this action.   Abdul-Kabir, 550 U.S.

at 246; Penry, 532 U.S. at 792; Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007).

Under the deferential review standard, habeas relief may not be granted with

respect to a claim adjudicated on the merits in state court unless the adjudication of the

claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).   Cullen v. Pinholster, 563 U.S. 170, 181 (2011).   "This is a difficult

to meet, and highly deferential standard for evaluating state-court rulings, which demands

that the state-court decisions be given the benefit of the doubt."   Id. (internal quotations

and citations omitted).   See also Harrington v. Richter, 562 U.S. 86, 102 (2011) (pointing

out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant

by an "adjudication on the merits."   Childers v. Floyd, 642 F.3d 953, 967-68 (11th Cir.

2011).   A state court's summary rejection of a claim, even without explanation, qualifies

as an adjudication on the merits that warrants deference by a federal court.   Id.; see also Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).   Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the court."   Childers v. Floyd, 642 F.3d at 969 (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court."   Thaler v. Haynes, 559 U.S. 43, 47 (2010); see also Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)) (recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision).   "A state court decision involves an unreasonable application of federal law when it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."   Ponticelli v. Sec'y, Fla. Dep't of Corr., 690 F.3d 1271, 1291 (11th Cir. 2012) (internal quotations and citations omitted). The "unreasonable application" inquiry requires the Court to conduct the two-step analysis set forth in Harrington v. Richter, 562 U.S. at 86.   First, the Court determines what arguments or theories support the state court decision; and second, the Court must determine whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior" Supreme Court decision.   Id. (citations omitted).   Whether a court errs in determining

facts "is even more deferential than under a clearly erroneous standard of review." Stephens v. Hall, 407 F.3d 1195, 1201 (11th Cir. 2005).   The Court presumes the findings of fact to be correct, and petitioner bears the burden of rebutting the presumption by clear and convincing evidence.   28 U.S.C. § 2254(e)(1).

### B.   Federal Claim Must Be Exhausted in State Court

Ordinarily, a state prisoner seeking federal habeas relief must first "'exhaus[t] the remedies available in the courts of the State,' 28 U.S.C. § 2254(b)(1)(A), thereby affording those courts 'the first opportunity to address the correct alleged violations of [the] prisoner's federal rights.'"   Walker v. Martin, 562 U.S. 307, 316 (2011) (quoting Coleman v. Thompson, 501 U.S. 722, 731 (1991)).   This imposes a "total exhaustion" requirement in which all of the federal issues must have first been presented to the state courts. Rhines v. Weber, 544 U.S. 269, 274 (2005).   "Exhaustion requires that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.   That is, to properly exhaust a claim, the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010) (citing O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) and Castile v. Peoples, 489 U.S. 346, 351 (1989)).

To fairly present a claim, a petitioner must present the *same* federal claim to the state court he urges the federal court to consider.   A mere citation to the federal constitution in a state court proceeding is insufficient for purposes of exhaustion. Anderson v. Harless, 459 U.S. 4, 7 (1983).   A state law claim that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement."

Duncan v. Henry, 513 U.S. 364, 366 (1995)(per curiam).  "'[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"  McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) (quoting Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004)).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine."  Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001), cert. denied, 534 U.S. 1136 (2002).  Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief. . . ."  Smith, 256 F.3d at 1138.  A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances.  First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error.  House v. Bell, 547 U.S. 518, 536-37 (2006); Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008).

 Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such a review is necessary to correct a fundamental miscarriage of justice.  House, 547 U.S. at 536; Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

### C.  Ineffective Assistance of Counsel Claims

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).  Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008).  Post-AEDPA, the standard in Strickland v. Washington, 466 U.S. 668 (1984),

remains applicable to the claims of ineffective assistance of counsel raised in this case. Newland, 527 F.3d at 1184.   In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   Strickland, 466 U.S. at 688; see also Bobby Van Hook, 558 U.S. 4, 8 (2009); Cullen v. Pinholster, 131 S. Ct. at 1403 (2011).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices."   Bobby Van Hook, 558 U.S. at 9 (internal quotations and citations omitted).    It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable."   Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny.   Id.   A court must adhere to a strong presumption that "counsel's conduct falls

within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689.   An attorney is not ineffective for failing to raise or preserve a meritless issue.   <u>Ladd v. Jones</u>, 864 F.2d 108, 109-10 (11th Cir. 1989); <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different.   So, omissions are inevitable.   But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting <u>Burger v. Kemp</u>, 483 U.S. 776, 794 (1987)).

## IV. Findings of Fact and Conclusions of Law

The Petition raises these four grounds:

> **Ground One-** Ineffective assistance of counsel for failure to call available alibi witnesses to corroborate alibi defense;
>
> **Ground Two-** Ineffective assistance of counsel for failure to explore the possibility of a plea deal;
>
> **Ground Three-** Ineffective assistance of counsel for failure to obtain and submit exculpatory evidence that would support alibi defense and could impeach state witness;
>
> **Ground Four-** Ineffective assistance of counsel for failure to object and move for a curative instruction on prejudicial comments.

<u>See</u> <u>generally</u> Petition.   The Court will address each ground in turn.

## A.   Ground One

Petitioner argues that his defense counsel rendered ineffective assistance by failing to call alibi witnesses.   Petition at 4.   Petitioner explains that his aunt, Maria Garcia, was an alibi witness who testified at trial that Petitioner was attending a graduation party at her home when the crime occurred.   <u>Id.</u>   Petitioner explains that Maria Garcia

provided his defense attorney a list of witnesses who attended her party, but his defense attorney failed to call them.   Id. (citing Exh. A).

In Response, Respondent initially asserts that portions of this claim are unexhausted and procedurally defaulted.   Specifically, Respondent notes that to the extent Petitioner faults defense counsel for not repeatedly trying to contact the proposed witnesses, or for failing to move for a continuance of trial to do so, Petitioner failed to raise such claims before the state courts, and is now procedurally barred under Florida's two-year time limit for filing a Rule 3.850 and its successive bar.   Response at 17-18. Respondent further argues the postconviction court's decision denying Petitioner relief on this claim was reasonable because defense counsel explained that she received the list of witnesses two weeks before the start of trial and contacted them by phone.   None of the witnesses returned defense counsel's phone call and she had no mailing addresses. Id. at 18-19.

The Court finds Ground One is exhausted to the extent Petitioner raised the claim that counsel should have called other alibi witnesses provided by his aunt as his first claim for relief in his Rule 3.850 motion and appealed the adverse result.   Exh. 7 at 7-10 (initial Rule 3.850 motion); Exh. 9 (Supplemental Rule 3.850); Exh. 16 (appeal). To the extent Petitioner for the first time faults his counsel for not moving for a continuance, such claims are not exhausted and are now procedurally defaulted.   Nor does Petitioner show cause, prejudice, or a fundamental miscarriage of justice to overcome the procedural default of this portion of the claim.

The Court now turns to address the portions of Ground One that Petitioner exhausted by filing a Rule 3.850 in the postconviction court.   In denying Petitioner relief

on Ground One, the postconviction court reviewed the law set forth in <u>Strickland</u>, and

determined that the record refuted Petitioner's claims that counsel did not attempt to

contact the list of alibi witnesses provided by Petitioner's Aunt Maria.   Exh. 11 at 3.

Specifically, the postconviction court found:

> In his amended Ground One, Defendant asserts that trial
> counsel was ineffective for failing to investigate or call nine
> alibi witnesses to testify at trial.   A defendant claiming
> ineffective assistance of counsel for failing to interview or call
> witnesses must allege: 1) the identity of the witnesses, 2) the
> substance of their testimony, and 3) how Defendant was
> prejudiced, and 4) whether the witnesses were available to
> testify.   <u>Spera v. State</u>, 971 So. 2d 754, 756 (Fla. 2007)
> (citing <u>Nelson v. State</u>, 875 So. 2d 579, 584 (Fla. 2004)).   In
> his amended motion, Defendant identifies the witnesses, the
> substance of their testimony, how Defendant was prejudiced,
> and that the witnesses were available to testify.   However,
> the record reflects that these witnesses were addressed in
> open court and prior to the commencement of trial. (T. 14-18).
> According to trial counsel, the witnesses were unavailable at
> the time of trial to testify because she could not obtain their
> addresses and were not told of their identities until
> approximately   two   weeks   before   trial.   (T.   14-15).
> Accordingly, the claims asserts by Defendant in Ground 1 are
> without merit and conclusively refuted by the record.

Exh. 11 at 4.   The appellate court *per curiam* affirmed the postconviction court's order.

Exh. 16.

The Court finds that the State court's denial of postconviction relief did not result

in a decision that was "contrary to, or involved an unreasonable application of" <u>Strickland</u>,

or "in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented" in the State court.   Here, Petitioner satisfied neither the deficient

performance, nor prejudice prongs of <u>Strickland</u> considering the record refuted

Petitioner's claim.   Defense counsel explained in open court that merely two weeks

before the start of trial, she received the list of alibi witnesses comprising other people

who attended Petitioner's Aunt's graduation party for her son.   Nevertheless, defense counsel stated that she called every phone number provided for the witnesses, but none returned her phone call, and none provided her with an address; so none were available witnesses.   The postconviction court's factual determination is entitled to deference and the record shows the determination was not an unreasonable application of the facts. Further, this Court notes Ms. Garcia testified that Petitioner attended her son's graduation party, although admittedly she couldn't remember when the party she planned for her son's graduation took place.   Thus, Petitioner also cannot show prejudice required under Strickland because Petitioner has not shown how failing to have these additional witnesses who attended the graduation party prejudiced him after his Aunt's testimony. Petitioner is denied relief on Ground One.

**B.   Ground Two**

Petitioner argues defense counsel rendered ineffective assistance for failing to explore the possibility of a plea with the prosecutor.   Petition at 6.   In Response, Respondent argues Ground Two is unexhausted and procedurally defaulted because Petitioner did not appeal the denial of this claim raised in his Rule 3.850 postconviction motion.   Response at 23-24.   Recognizing that the Court of Appeals for the Eleventh Circuit has found that a petitioner need not file an appeal of each specific claim when the lower court issues a summary denial, Respondent in the alternative addresses the merits. Id. at 23-25.   Respondent argues that the Court must deny Ground Two because the State courts' decision rejecting the claim was not contrary to or an unreasonable application of Strickland, nor was it an unreasonable determination of the facts.   Id. at 25-25.

This Court need not decide whether Petitioner exhausted Ground Two. Notwithstanding Petitioner's possible failure to exhaust the claim by failing to specifically enumerate the ground on appeal from the summary denial, the Court may deny the merits of the claim.   See 28 U.S.C. § 2254(b)(2) (stating "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of an applicant to exhaust the remedies available in state court."); Exh. 15.

Petitioner raised Ground Two in his Rule 3.850 motion filed in the postconviction court.   The postconviction court cited Strickland and denied Petitioner's claim. Specifically, the postconviction court found:

> A review of Florida Rule of Criminal Procedure 3.171 reveals that neither the State nor defense counsel is required to enter into plea negotiations.   See Fla. R. Crim. P. 3.171.   A review of discussions in open court prior to trial reveals that no plea negotiations transpired between the State and defense, and both trial counsel and Defendant stated on the record that the defense was not interested in pursuing a plea offer with the State (T. 18-19). Defendant's claim that trial counsel was ineffective for failing to explore the possibility of a plea deal with the State is based on pure speculation and cannot support a claim of ineffective assistance of counsel.   Jones v. State, 845 So. 2d 55, 64 (Fla. 2003) (postconviction relief cannot be based on speculative assertions).

Exh. 11 at 4.   The appellate court *per curiam* affirmed the postconviction court's order. Exh. 16.

The Court finds that the State court's denial of postconviction relief did not result in a decision that was "contrary to, or involved an unreasonable application of" Strickland, or "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in the State court.   Here, Petitioner satisfied neither the deficient performance nor prejudice prongs of Strickland, because the record clearly refused

Petitioner's claim and showed that neither defense counsel, nor Petitioner, were interested in discussing a plea with the State.   Petitioner is denied relief on Ground Two.

## C.  Ground Three

Petitioner argues defense counsel rendered ineffective assistance of counsel for failing to call Enedelia Garcia, who is Petitioner's mother, as an exculpatory witness. Petition at 7.   Petitioner explains that Enedelia Garcia could have provided photographic evidence from her cellphone depicting him at his aunt's graduation party when the crime occurred.   Petition at 7.

In Response, Respondent points out that Enedlia Garcia testified at trial and specifically recognized that the photographs from her cellphone did not confirm the date on which the photographs were taken.   Response at 27.   Thus, Respondent argues Petitioner cannot show defense counsel's performance was deficient because such photographic evidence did not exist.   Id.

The Court finds Ground Three is exhausted to the extent Petitioner raised this claim as his third claim for relief in his Rule 3.850 motion and appealed the adverse result thereafter.   Exh. 7 at 11 (initial Rule 3.850 motion); Exh. 9 (Supplemental Rule 3.850); Exh. 15 at 13 (appeal).   The postconviction court reviewed the law in Strickland and found Petitioner did not demonstrate either deficient performance or prejudice.   The postconviction court found:

> Defendant asserts that trial counsel was ineffective for failing to obtain dated photos from Defendant's mother's cell phone that allegedly could have been used to impeach the credibility of State witnesses who testified that Defendant was at the scene of the crime.   Specifically, Defendant argues that these photographs would demonstrate that Defendant's brother was not in Immokalee at the time of the incident and that this, in turn, would support Defendant's assertion that

Defendant was not at the scene either.   Defendant asserts that his mother had "told defense counsel about the existence of the photographs a month before trial and showed the photos to counsel, and yet defense counsel failed to obtain copies of them to show to the jury."   In its response, the State argues that the photographs were undated and that they would have been irrelevant in light of the aunt's trial testimony that reflected that she was unable to recall when the graduation party was held.   The State refers to portions of the following excerpt to demonstrate the irrelevance of the photographs:

Q:   Now at this deposition, that was when you first brought up this graduation party; is that right?

A:   Yes.

Q:   Okay.   And you recall me asking you questions about that graduation party?

A:   You asked what I—I don't recall what happened that day. I don't recall all the questions and what was said.

Q:   Okay.   But you do recall me asking you questions about it?

A:   Yeah.   Of what we did that day, and I told you that we had a graduation.   I told you that we had a graduation party.

Q:   Okay. Now, at that time, I asked you what day of the week this was?

A:   And I –

Q:   Do you recall that?

A:   Friday, Saturday, Sunday, I don't know what day of the week it was.

Q:   Okay.

A:   I'm not 100 percent.

T. 332.

The witness was then asked to read aloud the answer she had given the day of the deposition.   The following dialogue then ensued:

Q:   Okay.   Please start with Line 17, question, and that would be myself, and read that out loud.

A:   Okay.   What day was that?

Q:   And what was your answer to the question on that day, as it reads in that transcript?

A:   Oh shoot, shoot, I'm going to guess it was like Thursday or Friday.

Q:   Okay. So there's no mention on that day that it was a Saturday or Sunday?

A:   Right.

Q:   This is the first day we're hearing it probably was on a Sunday?   Would that be accurate?

A:   Yes.

(T. 332-33).   Thus, it appears that the State is arguing that the photographs would have been irrelevant as proof that the brother was not in Immokalee at the time of the shooting because the pictures were undated and the aunt who arranged the graduation party for her son was unable to remember when the party took place.   As to the aunt's testimony, the record reflects that she testified that her sister, the mother of Defendant, arrived at the aunt's house with Defendant's brother and his children.   (T. 333-34).   She was, however, unable to state when they arrived. (T. 335).   As to his mother's testimony, the record reflects that she testified about the pictures on her cell phone at trial. (T. 342-45).   She had been asked on direct where her son, the purported driver of the car, was the day of the shooting. She replied that he had been with her at the Shell Factory, and that she remembered this because of the photographs she had taken on her camera phone but that the dates on the photographs were from the date she had the photos printed. (T. 345).

Later, on cross-examination, Defendant's mother was again asked about the pictures on her cell phone.   She had just been asked what the family had been doing at the Shell Factory and how much time they had spent visiting various parts of it, and Defendant's mother stated that she could not recall. (T. 353).   The mother then explained why she did not give these photographs to the police, stating that she believed

that they would have arrested her if she had tried.   (T. 354-57).   Based on a review of the above referenced trial testimony, the Court finds that even if trial counsel were found to be ineffective for failing to obtain dated photos from Defendant's mother's cell phone that allegedly could have been used to impeach the credibility of State witnesses who testified that Defendant was at the scene of the crime, Defendant cannot demonstrate that there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.   Therefore, even if trial counsel's performance was deficient as alleged in Defendant's Ground 3, trial counsel cannot be found to have been ineffective because Defendant cannot demonstrate prejudice pursuant to <u>Strickland</u>.   Accordingly, Ground 3 is hereby denied.

Exh. 11 at 6-7.   The appellate court *per curiam* affirmed the postconviction court's order.

Exh. 16.

The Court finds that the State court's denial of postconviction relief did not result in a decision that was "contrary to, or involved an unreasonable application of" <u>Strickland</u>, or "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in the State court.   Here, Petitioner satisfied neither the deficient performance nor prejudice prongs of <u>Strickland</u> considering the record conclusively refutes Petitioner's assertion that his mother's cellphone contained exculpatory photographs showing he was at the graduation party.   As evidenced from the trial testimony, the other cellphone photographs his mother had from the Shell Factory contained the date the photographs were printed, not the date they were taken.   Further, Petitioner's mother, similar to Petitioner's Aunt, could not remember the day the graduation party occurred and in fact testified in court that the graduation party happened on a different day of the week than the day she had previously testified to during her deposition.   Petitioner is denied relief on Ground Three.

**D.   Ground Four**

Petitioner argues that his defense attorney rendered ineffective assistance of counsel when counsel failed to object and failed to move for a curative instruction based on the prosecutor's prejudicial comments.   Petition at 10.   Specifically, Petitioner faults the prosecutor for saying he was a gang member during closing argument.   Id. Petitioner refers the Court to these statements:

> **PROSECUTOR:**   And [Guerrero] told you that he was a witness in that case, and that this man and his brother, Isreal, who you saw on the stand, are friends with Mr. Argeta.  I believe the language the victim used was, they run together, their gang members, they look out for one another.

Id.   (errors in original).

In Response, Respondent first argues that Ground Four, similar to Ground Two, is unexhausted and now procedurally defaulted because Petitioner did not specifically raise this claim in his appellate brief after the postconviction court issued an order summarily denying his claim.   Response at 31.   Turning to the merits, Respondent argues that the postconviction court's determination is entitled to deference under AEDPA.   Id. at 32.

Notably, Petitioner raised Ground Four as his fourth ground, subsection (c), in his Rule 3.850 motion filed in the postconviction court.   The Court need not decide whether Petitioner was required to specifically enumerate this ground in his appeal of the postconviction court's denial of his Rule 3.850 motion because this Court may nevertheless deny a petitioner relief on the merits of an unexhausted claim.   28 U.S.C. § 2254(b)(2).

The postconviction court reviewed the law in Strickland and found Petitioner did not demonstrate prejudice under Strickland.   The postconviction court found:

> As for Ground 4c, Defendant asserts that trial counsel was ineffective for failing to object to highly prejudicial comments allegedly made by the prosecutor in the State's closing

argument. Specifically, Defendant refers to the following statement made by the prosecuting attorney during closing argument:

And [Guerrero] told you that he as a witness in the case, and that this man and his brother, Isreal, who you saw on the stand are friends with Mr. Argeta.   I believe the language the victim used was, they run together, they're gang members, they look out for one another.

(T. 418).   Having reviewed the transcript, the Court finds that, even if trial counsel was ineffective for failing to object to the statement made by the prosecuting attorney during the State's closing argument that Defendant was a member of a gang, the outcome of the underlying case at the trial level would not have been different had the objections been made. Bouchard, 922 So. 2d at 430-31.   Therefore, even if trial counsel's performance was deficient as alleged in Defendant's Ground 4c, trial counsel cannot be found to have been ineffective because Defendant cannot demonstrate prejudice pursuant to Strickland.   Accordingly, the claims asserted by Defendant in Ground 4c are without merit.

Exh. 11 at 4.   The appellate court *per curiam* affirmed the postconviction court's order.

Exh. 16.

The Court finds that the State court's denial of postconviction relief did not result in a decision that was "contrary to, or involved an unreasonable application of" Strickland, or "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in the State court.   Evidence was presented during the victim's testimony that Petitioner was a gang member.   Thus, the prosecuting attorney's brief statement during closing argument that Petitioner was a gang member was a comment on evidence the jury already heard.   Moreover, there was overwhelming evidence of Petitioner's guilt including testimony from the victim, who saw Petitioner shoot him, and another witness who was outside of the grocery store when the shooting occurred.   See generally Exh. 1, Vol. 4, T. 282-83; Vol. 3, T. 167) (victim testimony); Exh. 1, Vol. 2 at

175, 192, 195, 197-98 (second eyewitness testimony).   The postconviction court's decision was not contrary to, nor an unreasonable application of <u>Strickland</u>.   Petitioner is denied relief on Ground Four.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   The Florida Attorney General is **dismissed** from this action.

2.   The Petition for Writ of Habeas Corpus ([Doc. #1](#)) is **DENIED** for the reasons set forth herein.

3.   The **Clerk of Court** shall terminate any pending motions, enter judgment accordingly, and close this case.

**CERTIFICATE OF APPEALABILITY AND**

**LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability on either petition.   A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA").   28 U.S.C. § 2253(c)(1); <u>Harbison v. Bell</u>, 556 U.S. 180, 184 (2009).   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement  to  proceed  further",  <u>Miller-El  v.  Cockrell</u>,  537  U.S.  322,  335-36 (2003)(citations omitted).   Petitioner has not made the requisite showing in these

circumstances.    Finally, because Petitioner is not entitled to a certificate of appealability,

he is not entitled to appeal *in forma pauperis*.

DONE and ORDERED in Fort Myers, Florida on this 1st day of March, 2017.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

FTMP-1
Copies: All Parties of Record